Good morning, Your Honors. May it please the Court. Mike Manning for Appellant Irongate Services. Whether the issue here is framed in terms of federal versus state law or application of the appropriate test under Montana law, the result is the same. The District Court erred in applying Montana's broad six-part equitable estoppel test to the question of whether a non-signatory can be bound by an arbitration clause. We don't believe that the Court needs to decide whether Arthur Anderson completely abrogated the application of federal substantive law here, because the test is the same either way. The test under federal substantive law or Montana law is direct benefits estoppel and not the broad six-part test. So federal law says, Stolt-Nielsen and Granite Rock, that you can't be compelled, a non-signatory can't be compelled to arbitrate, that its arbitration is a matter of contract. And if you haven't entered into the contract, then you're not bound. So if we applied pure federal law, I would think that would be the binding rule, right? So you really do need to have state law apply. I don't think so, Your Honor. This Court's decisions in Comer and Mundy and others consistently spoke of Well, anything that's before Arthur Anderson, of course, is not going to be relevant. Galaxy Yes, no, I understand. I just mean in terms of pure federal substantive law. The test was always that a non-signatory could be bound. Even Arthur Anderson itself speaks to enforcing contracts by or against non-parties under ordinary principles of contract. So based on state laws, as a state law applies, and if we applied pure federal law, my view would be under Stolt-Nielsen, you can't require a non-signatory to arbitrate. So let's talk about whether Montana law gets you where you want to go. Yes, Your Honor. Under the recent decision in Peeler v. Rocky Mountain Log Homes, I think that the Court confirmed that it will not apply the six-part test to this question. That case involved a little bit of the reverse. It was a non-signatory trying to compel a signatory to arbitrate. So it's not just a little bit of the reverse. It's completely different, right? Because the person being compelled to arbitrate had actually signed the arbitration agreement. Agreed. But we know that the Montana Supreme Court will apply direct benefits estoppel in a situation like we have here because of the unpublished decision in Stewart v. Hoffman. That case involved a non-signatory being compelled to arbitrate after not signing a participation farm-out agreement. And the Montana Supreme Court held that because the non-signatory had accepted the benefits of that contract, he was bound by his burdens under it, including all of his burdens to the point where they held that that participation farm-out agreement that he hadn't signed trumped an operating agreement that he had signed. I think it's also telling that the Montana Supreme Court cited a statute there, 28-2-503-2, that effectively codifies direct benefits estoppel. It says in so many words that if a party voluntarily accepts the benefits of a contract, he is bound by the burdens. So even though there's not a published case directly on point for this situation in Montana, there is a lot of predictive points out there, Stewart and the statute. I think it's also telling that Peeler adopted the test that it adopted for the reverse situation from California law. Counselor, I just have to interject here and say, you know, I'm a former trial court judge and part of me is just so distracted by it seems to me that you've changed your position entirely from what you argued in the district court. And so the district court didn't get a fair run at these arguments that you're giving to Judge Dakota, did it? Your Honor, I would say that it is, it is absolutely true that we have advanced different positions on appeal. I think that there is no waiver here under the Nicholson case because the positions that we've argued on appeal are all arguments for direct benefits estoppel, which is the test that we've been advocating for all along. Although in the trial court, you didn't argue that Montana law should apply at all. We did not. At that time, we didn't have the benefit of Peeler. We had, we had an argument that the six-part test applied under Montana law and our position was no. But Peeler, you didn't even raise on appeal, right? Well, Peeler... That was the only one we asked you to... Peeler was just decided in December, yes, after the briefing was complete. And Your Honor, there wasn't any attempt on appeal to say that under Montana's six-part test that your team wins, right? No, that is true. Our position all along has been that the six, the six-part test does not apply and the direct benefits estoppel does. I would also say to the extent that Your Honor thinks that we might have waived that argument, we would ask the court to exercise its discretion to consider it because this is a purely legal issue. It doesn't involve the development of any facts. Both parties have fully briefed it. And now we have Peeler, which was decided after the case was fully briefed, that tells us for sure that Montana's not going to apply the six-part test to decide whether a non-signatory is bound by or can compel arbitration. Did you say for sure? Tells us for sure? I think it does because Peeler, Peeler... You also said that Peeler's not really on all fours and you don't have binding controlling authority. Do you want to pick up there and... Yeah, Peeler is not on fours in terms of the sense that it doesn't involve a signatory trying to compel a non-signatory. It involves the reverse situation. But I think it is telling that the court there did not even look to Montana's six-part test. When it talked about ordinary contract and agency principles, estoppel being one of them, that applies to the question of whether a non-signatory can compel arbitration, it went straight to the same test that California applies. So it applied Goldman, so it applied California's test. And California has, does have a different test for compelling non-signatories to arbitrate, but that seems to require that there be a agency relationship between the non-signatory and the signatory. I agree... So that issue was waived below, if I understand correctly. Well, I agree that California law applies in agency. Well, let me back up. I agree that California law has found that a non-signatory can be bound to arbitrate under agency type principles. And it is true that we're not advocating that argument on appeal. So if the Montana Supreme Court says, we think California got it right, which is very odd to me as a Californian, but, and we've adopted Goldman. And so if we get a situation where there's a signatory trying to compel a non-signatory to arbitrate, we will look again at California law, then the California law would not help you. So if we predicted that Montana Supreme Court would look again to California law on this compelling non-signatories to arbitrate, that it wouldn't help you in this situation because of the waiver of the agency claim. Is that right? I don't think that the agency cases would help us, but I do think that California law would help us. And I would point the court to the NorCal decision cited in the briefs. That was a case that involved binding a non-signatory to an insurance policy. That was a pre-existing relationship case as well, looking at agency. Agency or similar relationship between the non-signatory and one of the parties to the arbitration agreement. I agree that the court discussed that, but I think that it ultimately decided the case on a direct benefits estoppel principle. The quote at the conclusion was, the fundamental point is that the respondent was not entitled to make use of the policy as long as it worked to her advantage, then attempt to avoid its application in defining the forum in which her dispute with NorCal should be resolved. And I think that that is just a recitation of the direct benefits estoppel test. They held her to that contract, that insurance policy because she accepted the benefit of having a defense provided for her. And so when it came time to arbitrate, the court didn't let her avoid arbitration, not because of the agency relationship, but because she had accepted that defense. And I think that's the same situation we have here. The individual plaintiffs are trying to take advantage of the benefits of the master services agreements while simultaneously avoiding arbitration. The benefits here are the work that they performed and the services that they performed for Iron Payment that they received. And we know that they received payment and accepted the payment because they alleged it in their complaint. The corporate plaintiffs aren't making any claims here, only the individual plaintiffs are. There's no piercing the corporate bail claim here, is that right? There was no argument raised below that the LLC and the individual plaintiffs are the same entity? No, that is true. The individuals got paid from the LLC, correct? I believe that they did, but they alleged in their complaint that the defendants, including Iron Gate, paid them a daily wage rate and paid them time and a half on some but not all holidays. They're not alleging here that they were paid, that they were employees of Iron Gate, but received no wages. They're alleging that they were employees and they just didn't receive overtime. What do we do about the provision, the MSA, saying that there's no, nobody other than the parties have any benefit from the agreement, there's no third-party beneficiary, et cetera? First I'd emphasize that when the court gets to that analysis, that is a matter of federal law and the Moses H. Cohn case says that any doubts concerning the scope of arbitrable issues have to be resolved in favor of arbitration. And so applying that standard, the district court's interpretation of this... By Montana contract law, and we're saying who the agreement is between, how do we interpret that in light of the argument that the agreement is actually between other people, that other people are beneficiaries? I think, Your Honor, that's the first part of the FAA analysis, whether there's a valid agreement to arbitrate. And we concede that the contract is not facially broad enough to encompass disputes against the non-signatory, the individual plaintiffs here. But that's why equitable estoppel has to apply. Equitable estoppel is an exception to that rule. And so if direct benefits estoppel applies and the court finds that the individual plaintiffs are bound by principles of estoppel, it's found that the exception to the general rule that arbitration is a matter of contract means that there is a valid agreement to arbitrate between the parties by estoppel principles, not contractual ones.  Well, at that point, I don't think that you revert then back to the face of the contract and ask again in the second part of the analysis who can be bound, because that question's already been answered in the first part by estoppel. And at the second part of the test, the question just becomes what types of disputes are encompassed in the arbitration clause here. And the answer is any about interpretation or enforcement of the agreement. And I think the plaintiff's claims fall squarely within that scope. I could reserve the remainder of my time. Thank you. Good morning, and may it please the court. My name is Mike McLean, and I represent the corporate plaintiffs and the individual plaintiffs in this matter. I want to begin by following up on that discussion that this court had regarding the recent Supreme Court case in Peeler, and the representation to this court that clearly now the Montana Supreme Court is moving away from the equitable estoppel jurisprudence that we've had for a hundred years and are now seeking outside guidance on how to apply equitable estoppel to cases such as the one at Barr. And I took this court's order very seriously and reviewed Peeler in Why didn't the Montana Supreme Court just simply apply the equitable estoppel law that it has on the books? And the reason is because neither party in Peeler asked for that. Peeler, the plaintiff, was arguing that Rocky Mountain Homes did not have standing to even assert the arbitration claim. Rocky Mountain Homes, in its brief, didn't argue for the application of the Montana equitable estoppel test because, like Iron Gate here, it couldn't meet that test. Right, but Montana knows what its law, the Montana Supreme Court knows what its law is, and they clearly relied on Goldman and applied California law in this context, a completely different test. So presumably they, we at least, have to presume that they knew what they were doing regardless of whether the parties neglected to argue the six-part test. Your Honor, I would agree with you that I think the Montana Supreme Court knows what its law is. My point to you is, neither party requested for that application. And I think that it's very similar to what this court did in the Kramer versus Toyota Motor Corp case, where this court was applying California law, even though they were a host of class action lawsuits from all over the country that were then centered in the Central District of California. The court here in Kramer did exactly what the Montana Supreme Court did in Peeler, and it applied the law that was requested by the parties. But what is important to remember about Peeler is that the Montana Supreme Court did not adopt a direct benefits estoppel test. That wasn't the test. The test that was used in Peeler was discussed at length in Murphy and as, and in Comer. And in those lines of cases, this court has said there are two tests for equitable estoppel, one in which a signatory attempts to bind a non-signatory and one where a non-signatory is attempting to avoid arbitration. The test that's applicable here, if this was an appropriate place to be arguing for direct benefits estoppel as opposed to Montana's test, is there is no evidence whatsoever that the individual plaintiffs in this case knowingly exploited the contract at issue here. And that is the direct benefits estoppel test. What they did is they went to work. They want to argue here for this court that the benefit that the individual plaintiffs received by virtue of the master services agreements are getting to go to work. Well, if that's a benefit to the individual plaintiffs, what's the benefit to Iron Gate? They both can't have the same benefit, otherwise the contract lacks for consideration. Isn't that what an employer-employee contract is about? The employer gets the benefit of the employee working for it and the employee gets the benefit of a job and being paid for his or her work. Correct. What Iron Gate is arguing is the benefit received by the individual plaintiffs here is the opportunity to work. Montana, in winters like we have here, little kids come up all the time asking to shovel your sidewalk for money. They do it as a way to make spare change. I can't imagine the look on any of those little kids' faces if they rang the doorbell after the job was done and I said, you know what your benefit is? Your benefit was getting to perform the shoveling. They're wanting payment. Similarly, the individual plaintiffs here provided their personal services for payment. That payment was made to limited liability companies. That's where the direct benefit was. Indirectly, the individual plaintiffs were then paid from distributions after those limited liability companies had to pay for their expenses, etc. A Montana State District Court case stated in a partnership setting that payments made to a partnership is not a direct benefit for purposes of binding under equitable estoppel. It is an indirect benefit. That is precisely what is going on here. These individuals, if at all, were indirectly benefited by the wages. But more importantly, Montana has law dealing with equitable estoppel. Montana has these traditional contract principles that allow a party to be bound or to enforce contracts. So why didn't they apply it in Peeler? My assessment is because they were not asked to. Well, it's the Montana Supreme Court and I agree with Judge Acuda. They decide what the Montana Supreme Court would do. What do we know about what they would do where there's a non-signatory? And the question is whether the non-signatory should be bound. It seems to be much easier to bind somebody who's signed. Correct, because it's a matter of contract. In terms of a non-signatory, that issue has not been before. But what I do know is that in applying Montana's six-part equitable estoppel test in other contexts, the Montana Supreme Court has found, for example, in the Boise Cascade v. First Security Bank case that's cited in the briefs, that there was, under Montana's equitable estoppel test, a valid contract formed. It would seem to me that if you're going to be able to form a contract by equitable estoppel, then a party's also going to be able to enforce it. What do you think about the fact that your opponent has changed argument on appeal? He says it's a pure question of law, so we should not be deterred. Well, I certainly can appreciate that, but what we have to remember is this Court is sitting here in a de novo review of the District Court's decision. This Court is being asked to assign error to the District Court's conclusions for arguments that were never made to it. That's my point, and his response is, it is de novo, it's a pure question of law, so what do you think we ought to do? I think you should consider those arguments waived. They made a choice in the District Court to argue vehemently that federal law and not Montana law applied. That was a trial choice that they made. The choice ended up, in my opinion, not being the correct choice. We're all free to make whatever choices we want, we're just not free to escape the consequences of those choices. Well, I'll tell you, so you have an opportunity to respond, and opposing counsel will as well. Even on de novo review, we really benefit from and are interested in the thoughts of the District Court judges, and we do a lot of de novo review. We do it every time we have pretty much a dispositive motion. And so if this were the case, that it's okay to shift horses, shift gears, you see, any time on appeal when we do de novo review, we would always be deprived of the benefit of the District Court's good work. So I'm really troubled by it. My response, Your Honor, is the District Court, after two well-written briefs by both parties, applied Montana's six-part test because the District Court believed that that's the correct test to apply, and that's the position of the plaintiffs in this case. What I want to talk to you about now is, I think under the first prong of the FAA is does a valid agreement exist? They've candidly admitted that the master services agreements by themselves do not create that agreement, so they have to argue this exception to the general rule, which is equitable estoppel, which is what we've been talking about. I want to now talk about the second prong of this test, whether or not the scope of the arbitration provisions encompasses the disputed issue. And our position is that answer to that question is also no. And it's no for two reasons, and I believe the Court touched upon it during Irongate's position here, is that the arbitration dispute provision is facially limited to the parties of the agreement. That's the contract that Irongate drafted, and that's who they said the disputes are to be between. But it is also limited for another reason. The disputes that are at issue here are wage claim disputes based on Montana law and federal law. These individual plaintiffs are not suing for breach of contract. These claims do not arise out of the contract, they arise out of statute. So separate and apart from being limited specifically to the signatory parties, the dispute themselves are statutory disputes. And that is a very similar result as to what this Court reached in the Rajah Gopalan case, and I believe in Mundy as well, is where they said, you don't get to, they're basing these claims on Washington statute, and therefore they are not suing for breach of contract, therefore the arbitration provision is not broad enough. That is the precise situation we have here. We're suing for statutory violations, and that is not a dispute that is arising out of the Master Services Agreement. So we believe that both questions that are required to be asked by this Court pursuant to the Federal Arbitration Act have to be answered in the negative. And because they're answered in the negative on either one, the motion to compel was properly denied by the District Court. If the Court has no further questions, that's all I have. Apparently not. Thank you. First I'd like to say that other states, a number of other states, including states in the Ninth Circuit, California and Arizona and Nevada, have multi-part tests, just like situations, but they also have other separate tests for equitable estoppel that apply when determining whether a non-signatory can compel or be compelled to arbitrate. So there's nothing fundamentally inconsistent about the Montana Supreme Court having a broad six-part equitable estoppel test and applying a separate equitable estoppel test in this situation. Judge Christin, you asked what the strongest indicators were about Montana applying the direct benefits estoppel test in a situation like this. We would say that it's Stewart and the statute. On the waiver question, our position is not that you should exercise your discretion to consider the issues here just because it's de novo review. I mean, there's de novo review in a lot of situations, like summary judgment that involve factual development. And while we appreciate it would have been helpful to have the District Court weigh in on the Erie analysis, if the court doesn't reach the legal issue here, it's going to be sanctioning the application of the six-part test, which Peeler, Stewart, and the Montana statute all strongly suggest are not going to apply here. Peeler also throws a little bit of a loop in things. This court's case law say that an intervening change in the law could warrant a motion for reconsideration or even a renewed motion to compel arbitration, which is exactly the reason we think this court should decide the legal issue. On the point that the claims here don't involve interpretation or enforcement of the contract, I'd point out that the plaintiffs have alleged a declaratory judgment action expressly asking the court to interpret and invalidate the agreement, and that their statutory wage law claims can't succeed unless the provisions or at least the independent contractor provisions in the MSAs are interpreted and invalidated. Why is that? Because the independent contractor is the LLC, right? The independent contractor is the LLC, and if those provisions are correct, it means that Iron Gate contracted with the LLCs, and the LLCs provided the services of their members. It's sort of fundamentally inconsistent to have Iron Gate hire Hoover and Associates and pay Hoover and Associates for the work that Hoover and Associates member Craig Arnold, for the work that he does for Iron Gate, and simultaneously say that Craig Arnold is an employee entitled to overtime. It has to be one or the other. Either Iron Gate contracted with independent contractors, or it employed the individual plaintiffs here. And so if those independent contractor provisions are effective, it completely undermines the individual plaintiffs' claims that they were employees. Okay, it doesn't seem like it's necessarily. It sounds like that's an argument that you'd make in the employee case. That is, I mean, that is an argument that we will make on the merits, and that, I think, is why those wage claims involve interpretation and enforcement of the agreement. Because if the agreement is enforceable, there are no wage claims. Okay, I think we have your argument. Thank you. Thank you. The case of Craig Arnold versus Iron Gate Services is submitted, and we'll next hear argument in Northwest Environmental Advocates versus the United States Department of Commerce and Washington Cattlemen's Association and Washington State Farm Bureau Federation.
judges: Ikuta, Christen, Choe-Groves